IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANDA WHITE | : | CIVIL ACTION |
| | : | NO. 11-4197 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

O'NEILL, J.                                                                                          JANUARY 4, 2012

## MEMORANDUM

Before me are defendant City of Philadelphia's motion to dismiss Counts I, II, IV, V and IX of plaintiff's Complaint and plaintiff's response thereto. For the reasons that follow, I will grant in part and deny in part the City's motion.

## BACKGROUND

Plaintiff alleges the following facts. Plaintiff is an African-American Philadelphia police officer. Compl. ¶ 13. On or around June 30, 2009, Philadelphia police officers and defendants Javier Montinez and Anthony Space were driving a police vehicle through a property owned and operated by the Housing Authority of the City of Philadelphia. Id. ¶¶ 42-43. Plaintiff and her minor child were in the vicinity of the police vehicle and plaintiff's child was nearly struck by the car. Id. ¶ 46. Plaintiff approached defendants Montinez and Space and attempted to warn the officers that her child and other children were in the area. Id. Plaintiff identified herself as a police officer, but defendants Montinez and Space proceeded to yell at plaintiff and place her under arrest. Id. ¶¶ 48-50. During the arrest, defendants Montinez and Space threw plaintiff against nearby vehicles and roughly placed her in their police vehicle. Id. ¶¶ 54 & 56. Ultimately, however, no charges were brought against plaintiff. Id. ¶ 57.

Shortly after plaintiff's arrest, certain Philadelphia police officers anonymously posted

disparaging comments about plaintiff on the website domelights.com.  Id. ¶ 58.  The comments referred to plaintiff "as a monkey, primate, gorilla, etc., who drug [sic] her knuckles on the ground."  Id. ¶ 59.  The comments never mentioned plaintiff's name but "it was obvious to everyone in Plaintiff's District and beyond" that the comments referred to plaintiff because she was one of very few female African-American police officers in her district, if not the only one.  Id. ¶ 62.

     Domelights.com also contains racially offensive content with respect to African-American police officers other than plaintiff.  Id. ¶ 6.  The content on domelights.com insults African-American police officers "on an almost daily basis."  Id. ¶ 35.  The John and Jane Doe defendants include police officers who write racially offensive posts on domelights.com or discuss the posts at work in front of African-American colleagues.  Id. ¶ 38.  These individuals have accessed domelights.com and discussed the site in plaintiff's presence during work hours.  Id. ¶ 7.

     The City's "management" knows that domelights.com publishes offensive content and is accessed by Philadelphia police officers during work hours.  Id. ¶ 29.  The City has done nothing to limit access to domelights.com or to discipline the officers responsible for it, choosing instead to ignore complaints about the website.  Id. ¶¶ 30-31.  Additionally, the City has evidenced a policy of allowing its computers to be used "for a racially hostile purpose" and allowing City police officers to engage in "racially offensive commentary and postings."  Id. ¶ 32.  The officers who posted racially offensive content on domelights.com engaged in conduct that "is contrary to Department policies and regulations that apply to all Police Officers, as law enforcement officials, to avoid engaging in racially offensive speech or conduct in public."  Id. ¶ 33.

The City also

> failed to adequately and property [sic] supervise and train in various aspects of law enforcement, criminal prosecution procedure and substance including, but not limited to the use of force, nature and existence of good cause, evaluation of character and the laws of the United States, Commonwealth of Pennsylvania and otherwise.

Id. ¶ 110B.[1]  The failure to train "police officers with respect to their use of power in accordance with the United States and Pennsylvania Constitutions" caused "[t]he actions and conduct of" the John and Jane Doe defendants.  Id. ¶ 111.

Plaintiff has filed the instant suit against the City of Philadelphia, Officers Montinez and Space, domelights.com, alleged domelights.com founder "Sergeant McQ" and John and Jane Doe defendants.  The City moves to dismiss the following claims against it:  hostile work environment on the basis of race in violation of 42 U.S.C. § 1981 (Count I), malicious prosecution in violation of federal civil rights law (Count IV), selective prosecution in violation of federal civil rights law (Count V) and a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (Count IX).  The City also moves to dismiss Count II, a § 1981 claim against "Sergeant McQ," domelights.com and John and Jane Doe defendants.

Domelights.com was the subject of an earlier suit in this Court.  See Guardian Civic League, Inc. v. City of Phila., No. 09-3148 (E.D Pa.).[2]  The parties settled that case and stipulated to its dismissal with prejudice.  See id., Dkt. No. 48.

---

[1]  The Complaint contains two paragraphs numbered 110.  I will refer to the first as 110A and the second as 110B.

[2]  When considering a motion to dismiss, I may take into account matters of public record.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are

4

sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

I.     Monell Claim

I will address the City's motion to dismiss plaintiff's Monell claim first because this discussion bears on plaintiff's § 1981 claim.  In Monell, the Supreme Court held that a plaintiff may sue a municipality under 42 U.S.C. § 1983 for a deprivation of constitutional rights when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690.  Moreover, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91.  But "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original).  Rather, a plaintiff must "demonstrate that the municipality itself, through the implementation of a municipal policy or custom, cause[d] a constitutional violation." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).

A municipality may be liable under § 1983 for failing to train its employees, but only where "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 392 (1989). A municipality shows deliberate indifference where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights." Id. at 390. The Court of Appeals has explained that a plaintiff "must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." Colburn, 946 F.2d at 1030.

Plaintiff alleges that the City of Philadelphia showed deliberate indifference to its citizens' constitutional rights by failing adequately to train City employees. Compl. ¶¶ 110A-11. Plaintiff further alleges that the City's failure to train its employees caused "[t]he actions and conduct of" John and Jane Doe defendants, presumably the individuals who anonymously posted racially disparaging comments about plaintiff on domelights.com. Id. ¶ 111. Plaintiff's opposition to the City's motion to dismiss makes clear that the harm alleged in the Monell claim stems from "the Dome Lights racial harassment and stereotyping." Dkt. No. 8 at 13.

The City argues that plaintiff has failed to identify a causal nexus between the alleged failure to train and her injury. I agree. Plaintiff alleges a failure to train in the areas of "use of force, nature and existence of good cause, evaluation of character and the laws of the United States, Commonwealth of Pennsylvania and otherwise" and "with respect to [police officers'] use of power in accordance with the United States and Pennsylvania Constitutions." Compl.

6

¶¶ 110B-11.  But the Complaint fails to allege that the City's failure to provide a specific type of training caused her exposure to harmful content on domelights.com.  Some of the allegedly absent types of training, such as "the use of force" and "good cause," have no causal nexus with racial harassment arising from domelights.com.  Other alleged forms of training, such as "evaluation of character," federal and state law and police officers' "use of power" are so general that they fail to satisfy plaintiff's obligation to "identify a failure to provide specific training."  See Colburn, 946 F.2d at 1030.

I will therefore dismiss plaintiff's Monell claim but will do so without prejudice.[3]  An amended complaint should allege facts showing how the failure to provide specific training caused her harm.

II.     Section 1981 Claim

The City of Philadelphia also argues that plaintiff has failed to state a claim under 42 U.S.C. § 1981 for hostile work environment on the basis of race.  Section 1981 provides in pertinent part that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  In general, a § 1981 claim for hostile work environment must satisfy the same elements as a hostile work environment claim under Title VII of the Civil Rights Act of

---

[3] "[U]nless an amendment would be inequitable or futile," a plaintiff should be granted leave to amend.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

1964.  See Griffin v. Harrisburg Prop. Servs., Inc., 421 Fed. App'x 204, 207 n.3 (3d Cir. 2011).

Those elements are:

> (1) the employee suffered intentional discrimination because of their [membership in a protected class]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position; and (5) the existence of respondeat superior liability.

Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (emphasis added).

For § 1981 claims against a municipality, however, the law is different.  The Supreme Court has held that "the express 'action at law' provided by § 1983 . . . provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989). Therefore, a plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of Monell and subsequent cases." Id. at 735-36.  As previously noted, Monell provides that "liability may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Accordingly, a plaintiff cannot bring a § 1981 claim against a municipality on the theory of respondeat superior.  See Hailey v. City of Camden, 650 F. Supp. 2d 349, 355 n.3 (D.N.J. 2009) ("The fifth element of a Title VII claim, respondeat superior liability, is not applicable to a claim under Section 1981 and 1983 . . . ."); Phillips v. Heydt, 197 F. Supp. 2d 207, 220-21 (E.D. Pa. 2002) ("Unlike under Title VII, under Section 1981 a municipality cannot be held liable

based on a theory of respondeat superior."). Rather than rely on respondeat superior, "the plaintiff must prove that a policy or custom of the municipality caused the hostile work environment." Hailey, 650 F. Supp. 2d at 355 n.3.

The City and plaintiff apparently overlook this principle, arguing in their briefs whether the complaint alleges a basis for respondeat superior liability. Nevertheless, the Complaint sufficiently sets forth a claim that a City policy or custom created a hostile work environment. Specifically, plaintiff alleges that the City has "evidenced a policy . . . of allowing the use of their [sic] computers for a racially hostile purpose and allowing its employee Police Officers to engage in publicly in [sic] racially offensive and hostile commentary and postings." Compl. ¶ 32. Accordingly, I will deny the City's motion to dismiss plaintiff's § 1981 claim.

III.     Malicious and Selective Prosecution

The City moves to dismiss plaintiff's claims for malicious and selective prosecution on the ground that the Complaint alleges that "[n]o criminal charges were ever pursued against the Plaintiff." Compl. ¶ 85. Plaintiff agrees that the malicious prosecution claim should be dismissed but does not address the selective prosecution claim. Because plaintiff alleges that she was never charged with a crime, she fails to state a selective prosecution claim. See U.S. v. Armstrong, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is . . . an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). Accordingly, I will grant the City's motion to dismiss the malicious and selective prosecution claims with prejudice.

IV.     Count II

Finally, the City moves to dismiss Count II, which is a § 1981 claim against

domelights.com, "Sergeant McQ" and John and Jane Doe defendants.  I will deny this part of the City's motion because Count II does not assert any claim against the City and the City of Philadelphia Law Department has not entered an appearance on behalf of these defendants.

An appropriate Order follows.