IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANDA WHITE | : | CIVIL ACTION |
|  | : | NO. 11-4197 |
| v. | : |  |
|  | : |  |
| CITY OF PHILADELPHIA, et al. | : |  |

O'NEILL, J.                                                                                            APRIL 13, 2012

## MEMORANDUM

Before me are defendant City of Philadelphia's motion to dismiss Counts VII and IX of plaintiff Shanda White's First Amended Complaint and White's response thereto. For the reasons that follow, I will grant the City's motion.

## BACKGROUND

White's Amended Complaint largely repeats the factual allegations in her original Complaint. White is an African-American Philadelphia police officer. Am. Compl. ¶ 13. On or around June 30, 2009, defendants Javier Montinez and Anthony Space, who are Philadelphia police officers, were driving a police vehicle through a property owned and operated by the Housing Authority of the City of Philadelphia. Id. ¶¶ 44-45. White and her minor child were in the vicinity of the police vehicle and White's child was nearly struck by the car. Id. ¶ 47. White approached Montinez and Space and attempted to warn the officers that her child and other children were in the area. Id. White identified herself as a police officer, but Montinez and Space proceeded to yell at White and place her under arrest. Id. ¶¶ 49-51. During the arrest, Montinez and Space threw plaintiff against nearby vehicles and roughly placed her in their police vehicle. Id. ¶¶ 55 & 57. Ultimately, however, no charges were brought against White. Id. ¶ 58. White alleges that her arrest occurred because the City failed to train its police officers "in the

methods of investigating crimes and arresting individuals who have been alleged to commit a crime." Id. ¶ 59.  Additionally, she contends that the City failed to train Montinez and Space in "police procedures and operating patrol cars, in making arrests and seizures and in the use of force," id. ¶ 107, and "in various aspects of law enforcement, criminal prosecution procedure and substance including, but not limited to the use of force, nature and existence of good cause, evaluation of character and the laws of the United States, Commonwealth of Pennsylvania and otherwise." Id. ¶ 110.

Shortly after White's arrest, certain Philadelphia police officers anonymously posted disparaging comments about her on the website domelights.com. Id. ¶ 62.  The comments referred to White "as a monkey, primate, gorilla, etc., who drug [sic] her knuckles on the ground." Id. ¶ 63.  The comments never mentioned White's name but "it was obvious to everyone in Plaintiff's District and beyond" that the comments referred to White because she was one of very few female African-American police officers in her district, if not the only one. Id. ¶ 66.

Domelights.com has also contained racially offensive content with respect to African-American police officers other than plaintiff. Id. ¶ 6.  The content on domelights.com insults African-American police officers "on an almost daily basis." Id. ¶ 37.  The John and Jane Doe defendants include police officers who write racially offensive posts on domelights.com or discuss the posts at work in front of African-American colleagues. Id. ¶ 40.  These individuals have accessed domelights.com and discussed the site in White's presence during work hours. Id. ¶ 7.

The City's "management" knows that domelights.com publishes offensive content and is

accessed by Philadelphia police officers during work hours. Id. ¶ 31. The City has done nothing to limit access to domelights.com or to discipline the officers responsible for it, choosing instead to ignore complaints about the website. Id. ¶¶ 32-33. Additionally, the City has evidenced a policy of allowing its computers to be used "for a racially hostile purpose" and allowing City police officers to engage in "racially offensive commentary and postings." Id. ¶ 34. The officers who posted racially offensive content on domelights.com engaged in conduct that "is contrary to Department policies and regulations that apply to all Police Officers, as law enforcement officials, to avoid engaging in racially offensive speech or conduct in public." Id. ¶ 35.

White has sued the City of Philadelphia, Officers Montinez and Space, domelights.com, alleged domelights.com founder "Sergeant McQ" and John and Jane Doe defendants. On January 4, 2012, I dismissed White's claims of malicious and selective prosecution because her Complaint alleged that White was never prosecuted. I also dismissed White's Monell claim against the City but granted her leave to amend that claim. White's Amended Complaint contains an amended Monell claim but it also repeats the Complaint's malicious prosecution claim. The City moves to dismiss both claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

DISCUSSION

I.      Monell Claim

In Monell, the Supreme Court held that a plaintiff may sue a municipality under 42 U.S.C. § 1983 for a deprivation of constitutional rights when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). Moreover, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91. But "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original). Rather, a plaintiff must "demonstrate that the municipality itself, through the implementation of a municipal policy or custom, cause[d] a constitutional violation." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).

A city may be liable under § 1983 for failing to train its employees, but "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). A city is liable only "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 392 (1989). A municipality shows deliberate indifference where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights." Id. at 390.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, 131 S. Ct. at 1360 (internal quotation marks omitted).  In a "pattern" case, a municipality whose employees commit repeated constitutional violations may show deliberate indifference by failing to train those employees.  On the other hand, a plaintiff need not establish a pattern of similar constitutional violations if "the unconstitutional consequences of failing to train [are] so patently obvious," id. at 1361, and the untrained employees have an "utter lack of an ability to cope with [the] constitutional situations" at issue.  Id. at 1363.  The Supreme Court has described a hypothetical situation that might give rise to this "single-incident" liability.  Where "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force," a plaintiff seeking to impose municipal liability might not have to present evidence that a pattern of similar constitutional violations took place.  Id. at 1361.  In this hypothetical situation, it is "assume[d] that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force" and the consequences of failing to train are obvious.  Id. at 1363.  The Supreme Court has cautioned, however, that this "single-incident" liability arises only in a "narrow range" of cases.  Id. at 1361.

     I dismissed the Monell claim in White's original Complaint because it alleged that the City's failure to train gave rise to racial harassment on domelights.com but it did not allege that the failure to provide a particular form of training caused her harm.  By contrast, in her Amended Complaint, White alleges that the City's inadequate training caused her unlawful arrest.  The Amended Complaint alleges a sufficient causal nexus between the absent training and White's

6

harm: White now alleges that the City's failure to train its officers how to operate patrol vehicles and make arrests caused the violation her constitutional rights. The Amended Complaint does not, however, allege facts sufficient to establish that the City acted with deliberate indifference. The Amended Complaint states in conclusory fashion that the City "demonstrated a deliberate indifference," Am. Compl. ¶ 112, but it does not contain any facts that support this conclusion. White does not allege that a pattern of unlawful arrests put the City on notice that its training was inadequate. Additionally, the Amended Complaint does not allege facts sufficient to establish "single incident" liability. White does not allege that the consequences of inadequate training were obvious or that police officers "utterly lacked" the ability to handle the constitutional situations at issue in this case. Absent these facts, the Amended Complaint does not allege deliberate indifference and fails to state a claim upon which relief can be granted.

I will therefore grant the City's motion to dismiss White's Monell claim. But because I did not discuss at length the deliberate indifference standard in my January 4, 2012 opinion, I will grant White leave to file a second amended complaint that conforms with the Supreme Court's requirements in Canton and Connick for establishing deliberate indifference.

II.     Malicious Prosecution

Even though my January 4, 2012 Order dismissed White's malicious prosecution claim, her Amended Complaint repeats it. It is undisputed that the City never brought charges against White and White does not contest the City's argument that the malicious prosecution claim should be dismissed. Accordingly, I will grant the City's motion to dismiss this claim.

An appropriate Order follows.